**ORTHOKINETICS, INC.,**
**Appellant/Cross-Appellee,**

v.

**SAFETY TRAVEL CHAIRS, INC., Entron, Inc., William J. Pivacek, Clark Chipman, William J. Cole, Appellees/Cross-Appellants.**

Appeal Nos. 85–2779, 85–2812.

United States Court of Appeals,
Federal Circuit.

Dec. 5, 1986.

Henry C. Fuller, Fuller House & Hohenfeldt, S.C., Milwaukee, Wis., argued for appellant/cross-appellee. With him on brief was Daniel J. Sammon, Watts, Hoffmann, Fisher & Heinke Co., L.P.A., Cleveland, Ohio, of counsel.

Charles B. Lyon, Renner, Otto, Boissellee & Lyon, Cleveland, Ohio, argued for appellees/cross-appellants. With him on brief was Gordon D. Kinder.

Before MARKEY, Chief Judge, NEWMAN, Circuit Judge, and SWYGERT, Senior Circuit Judge.*

MARKEY, Chief Judge.

Appeal and cross-appeal from a judgment of the United States District Court for the Northern District of Ohio, Civil Action No. C81–130. In Appeal No. 85–2779, Orthokinetics, Inc. (Orthokinetics) appeals from orders: (1) granting a judgment notwithstanding the verdict (JNOV) holding that: (a) claims 5 and 6 of its U.S. Patent No. 3,815,586 ('586 patent) are invalid under 35 U.S.C. § 102(b) and § 103; (b) claims 1–5 of its U.S. Patent Re. 30,867 ('867 patent) are invalid under 35 U.S.C. § 103 and § 112; (c) the defendant officers of defendant corporations are not personally liable for patent infringement and the corporations are free from charges of willful infringement; and (2) conditionally granting a new trial. We reverse and remand with instructions to reinstate the jury verdicts.

In Appeal No. 85–2812, the defendants (collectively, Safety) appeal from the judgment entered on the verdict on patent infringement and misuse, and denial of a new trial on those issues. We affirm.

* The Honorable Luther Merritt Swygert, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

## BACKGROUND

### I. *The Claimed Inventions*

Orthokinetics manufactures products for invalids and handicapped individuals, including pediatric wheelchairs. It is the assignee of the '586 patent issued to Raymond A. Kazik (Kazik) on June 11, 1974, entitled "Orthopedic Chair With Scoliosis Pads" and of the '867 patent reissued to Edward J. Gaffney (Gaffney) on February 16, 1982, entitled "Travel Chair".

The '586 patent discloses a wheelchair for treating persons, especially children, afflicted with scoliosis or curvature of the spine. The orthopedic wheelchair has a head restraint and a pair of laterally and vertically adjustable scoliosis pads attached at opposite sides of the chair and so positioned as to provide therapeutic contact with opposite sides of a person seated in the chair. The relevant claims read:

1. In a chair having a seat, a back, and means for supporting the same, the improvement comprising a pair of scoliosis pads each adapted to bear against the sides of a human body, and means for mounting said pads adjacent to opposite side of said chair in such position as to provide therapeutic contact with opposite sides of a person seated in said chair for treatment of curvature of the spine.

2. The improvement defined in claim 1 wherein said mounting means for each pad is vertically adjustable to permit said pads to be positioned in a vertically staggered relationship to develop a therapeutic force couple across said person's trunk tending to straighten out said curvature of the spine.

5. The improvement of claim 2 in combination with a head restraint which coacts with the scoliosis pads to exert therapeutic pressure on the spine.

6. The improvement of claim 5 in which said head restraint comprises pads which embrace the head and means for adjustably positioning said pads with respect to said back.

On January 26, 1981, Orthokinetics sued, alleging infringement of claims 5 and 6 of the nine claims in the '586 patent. On December 31, 1977, it had disclaimed claims 1 through 4. Because claims 5 and 6 depend from claims 1 and 2, however, they contain all of the limitations of claims 1 and 2.

The '867 reissue patent discloses a collapsible pediatric wheelchair which facilitates the placing of wheelchair-bound persons, particularly children, in and out of an automobile. Orthokinetics asserted infringement of claims 1 through 5 by Safety. Claim 1 reads [underscoring indicates language added by reissue]:

1. In a wheel chair having a seat portion, a front leg portion, and a rear wheel assembly, the improvement wherein said front leg portion is so dimensioned as to be insertable through the space between the doorframe of an automobile and one of the seats thereof whereby said front leg is placed in support relation to the automobile and will support the seat portion from the automobile in the course of subsequent movement of the wheel chair into the automobile, and the *retractor* means for *assisting the attendant in* retracting said rear wheel assembly upwardly independently of any change in the position of the front leg portion with respect to the seat portion *while the front leg portion is supported on the automobile* and to a position which clears the space beneath the rear end of the chair and permits the chair seat portion and retracted rear wheel assembly to be swung over and set upon said automobile seat.

Claim 2 eliminates the language added by reissue in claim 1 and adds:

wherein said wheel chair has a chair frame including back portion extending upwardly from said seat portion and a front leg portion extending downwardly from said seat portion and wherein said rear wheel assembly includes a rear wheel frame that extends forwardly from said rear wheels and wherein said means for retracting said rear wheel assembly includes means pivotally connecting the front of said rear wheel frame to

said chair frame, and a retractable strut connecting between said rear wheel assembly and said chair frame to support the wheel chair on the rear wheel assembly and to retract the rear wheel assembly upwardly under the chair seat portion by swinging said rear wheel frame upwardly.

Claim 3 limits the rear wheel frame of claim 2 to one which "comprises an upwardly arched undercarriage extending between said chair frame and rear wheels." Claim 4 limits the arch of the undercarriage of claim 3 to one which "substantially matches the angle between said seat portion and said front leg portion whereby said undercarriage swings into close proximity to said leg portion and seat portion when said rear wheel assembly is retracted." Claim 5 limits the chair frame of claim 3 to one which "comprises spaced support tubes, said upwardly arched undercarriage fitting between said tubes when the undercarriage is retracted." All five claims asserted are independent claims.

## II. *Procedural History*

Orthokinetics introduced the Travel Chair to the market in November of 1973. In 1978, Safety Travel Chairs, Inc. (STC) began to sell similar chairs manufactured by Entron, Inc. (Entron). William J. Pivacek, Clark Chipman, and William J. Cole established STC and were the stockholders and officers of STC and Entron. When Orthokinetics sued STC, Entron, Pivacek, Chipman, and Cole, it alleged willful infringement of claims 5 and 6 of the '586 patent and various claims of its then U.S. Patent No. 3,891,229 ('229 patent). When the '229 patent reissued as the '867 patent on February 16, 1982, Orthokinetics amended its complaint to allege infringement of claims 1–5 of that patent, and demanded a jury trial. Safety answered that the patents were invalid and not infringed, and counterclaimed that Orthokinetics had misused its patents when it filed its complaint.

On the liability issues only, trial before a six-member jury was commenced on January 4, 1984, and continued until January 16. Unfortunately, the parties and the court did not decide, and apparently did not discuss, in a pretrial conference or otherwise before trial, just what the jury would be asked to do (*e.g.*, return a general verdict, a general verdict accompanied by answers to interrogatories, or a series of special verdicts on individual issues).

At trial, the district court denied numerous motions for directed verdicts filed by the parties. Under Fed.R.Civ.P. 49 (the parties dispute whether under Rule 49(a) or (b)), the district court submitted to the jury a series of 54 jointly-prepared questions (samples of which are in the attached appendix). The questions recognized the appropriate burdens to be met by each of the parties as well as the corresponding standard of proof with respect to each issue. The jury returned its answers to the questions on anticipation, obviousness, infringement, willful infringement, misuse, and personal liability of the corporate officers. All were favorable to Orthokinetics.

Viewing the obvious/nonobvious conclusion as one that could be made only by the court, and therefore considering the jury's nonobvious verdict, *after* it was returned, to have been merely "advisory", the district court entered judgment on January 30, 1984 for Orthokinetics on the infringement and misuse issues only. On February 23, 1984, because it felt validity of the patents had not been decided, the district court denied Orthokinetics' motion for a temporary restraining order and preliminary injunction. On July 17, 1984, on becoming aware of this court's statement that "[t]he obviousness/nonobviousness issue is a legal issue and may be submitted to the jury with proper instructions," *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894–95, 221 USPQ 669, 674 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984), the district court entered judgment on the jury verdicts on patent validity and willful infringement.

Safety filed motions for JNOV on the issues of validity, infringement, and patent misuse, and in the alternative for a new trial.

### III. *Summary of the District Court's Opinion*

On June 14, 1985, the district court filed a 69-page unpublished opinion, vacated its January 30 and July 17, 1984 judgments, and dismissed the complaint and counterclaim. It granted Safety's JNOV motion on validity, holding claims 5 and 6 of the '586 patent invalid because the claimed inventions were: (1) on sale or in public use, under § 102(b); and (2) described in a printed publication under § 102(b); and (3) obvious under § 103. The district court held claims 1–5 of the '867 patent invalid as: (1) indefinite under § 112; and (2) drawn to inventions that would have been obvious under § 103.

The district court denied and granted portions of Safety's motion for JNOV on infringement. In its denial, it held STC and Entron guilty of infringement. In its grant, it held that (1) Chipman, Cole, and Pivacek had not infringed either of the two patents and were not personally liable for their corporation's infringement; and (2) no defendant had committed acts of willful infringement.

The district court denied Safety's motion for JNOV on patent misuse.

The district court conditionally granted Safety a new trial if this court were to reverse the district court's entry of JNOV holding the patents invalid. *See* Fed.R. Civ.P. 50(c)(1), 59(a).

On August 9, 1985, the district court amended its opinion in response to a motion filed by Safety.

### ISSUES

(1) Whether the district court erred in granting Safety's motion for JNOV on validity of the '586 and '867 patents.

(2) Whether the district court erred in denying Safety's motion for JNOV on infringement.

(3) Whether the district court erred in granting Safety's motion on personal liability of corporate officers.

(4) Whether the district court erred in granting Safety's motion for JNOV on willful infringement.

(5) Whether the district court erred in denying Safety's motion for JNOV on patent misuse.

(6) Whether the district court abused its discretion in conditionally granting Safety a new trial.

### OPINION

### (1) *Safety's Motion for JNOV on Validity*

### A. *Introduction*

■ This appeal presents an uncommon and somewhat incongruous situation. The district court entered JNOV on validity in favor of the party who had the burden at trial to prove facts by clear and convincing evidence that would require a conclusion of obviousness. 35 U.S.C. § 282; *see, e.g., Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1550, 220 USPQ 193, 199–200 (Fed. Cir.1983); *Moore v. Shultz*, 491 F.2d 294, 298–99, 180 USPQ 548, 551 (10th Cir.), *cert. denied*, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974). Under the law set by Congress, a jury or a court may reach a conclusion that a patent remains valid *solely* on the failure of the patent challenger's evidence to convincingly establish the contrary. A patent being presumed valid at birth, § 282, a patentee need submit *no* evidence in support of a conclusion of validity by a court or a jury. If the patent challenger introduces evidence that might lead to a conclusion of invalidity, a patentee would be well advised to introduce evidence sufficient to rebut that of the challenger. If the challenger's evidence be totally inadequate, a patentee's motion for judgment or directed verdict that the challenger's § 282 burden had not been carried would be appropriately granted before the patentee introduces any rebuttal evidence.

This appeal also illustrates the confusion created in the field of patent litigation by the unwillingness of patentees and alleged infringers to proceed under the rules applicable to all other types of litigation in

which a statute or case law has assigned burdens of proof. Courts can hardly be criticized for confusing the burden assignment when counsel proceed as though the statute, § 282, did not exist.

As here, patentees have historically sought to "go first" with testimony on validity, on the empirically unproven premise that a favorable "first impression" of the merits of the invention will carry through to victory. Courts and alleged infringers have acquiesced in the practice. The resulting erroneous but clear impression that patentees bear a burden of "proving validity" has frequently resulted in cluttered records, irrelevant detours, undue burdens on the judicial process, and unnecessary work for the trial court.

Recognizing that trials conducted in accord with the statutorily assigned burdens would not result in assured victory or more victories for either side, courts should consider pretrial orders designed to facilitate such trials.

Similarly, courts should consider pretrial orders in jury trials that specify precisely what the jury will be asked to do after it has been given instructions prepared in light of the evidence and at the end of its deliberations: (1) return a general verdict ("we find for plaintiff/defendant"); (2) return a general verdict accompanied by answers to factual interrogatories prepared in light of the evidence; (3) return special verdicts on specific issues appearing in the evidence ("we find for plaintiff/defendant on the XXXXXXX issue"; or (4) merely "advise." Unfortunately, as counsel stated at oral argument, that was not done here.

### B. Standard of Review

This court has recently reiterated the standard under Fed.R.Civ.P. 50(b) concerning a motion for JNOV in relation to an issue on which the movant did not have the burden of proof:

A trial judge presented with a motion for JNOV (1) must consider all the evidence in a light most favorable to the non-mover, (2) must not determine credibility of witnesses, and (3) must not substitute his or her choice for the jury's in finding facts, drawing inferences, or deciding between conflicting elements in the evidence.

DMI, Inc. v. Deere & Co., 802 F.2d 421, 425, 231 USPQ 276, 278 (Fed.Cir.1986); see Weinar v. Rollform Inc., 744 F.2d 797, 805, 223 USPQ 369, 373 (Fed.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985). If then the district court is "convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict for the non-mover, it should grant the motion for directed verdict or for JNOV." Connell, 722 F.2d at 1546, 220 USPQ at 197; see Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1454–55, 223 USPQ 1161, 1166–67 (Fed.Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985).

To convince this court that a trial judge erred in granting a motion for JNOV, an appellant need only show that there was substantial evidence to support the jury's findings and that those findings can support the jury's legal conclusion. Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 619, 225 USPQ 634, 636 (Fed.Cir.), cert. dismissed, — U.S. —, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985); Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed. Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), cert. denied, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

Having carefully reviewed the record to determine whether there was such substantial evidence in support of each of the jury's critical findings, we are convinced that the district court inappropriately invaded the province of the jury, in derogation of Orthokinetics' rights as expressed in the Seventh Amendment to the Constitution.

## C. *The '586 patent*

### (i) *On Sale/Public Use, § 102(b)*

The jury specifically found (question No. 31) that Safety failed to prove by clear and convincing evidence that the "subject matter" of claims 5 and 6 of the '586 patent was offered for sale or publicly used more than one year before its December 4, 1972 filing date. Because of that finding, the jury had no reason to, and did not answer the interrogatory on whether Orthokinetics had proved that what Safety alleged was a sale offer/public use was in fact done for an experimental purpose. The district court held that the jury's finding of no offer for sale or public use was "without basis in the record."

It was undisputed that Kazik and Gaffney took a prototype chair Kazik had built to several facilities including the Southern Colony Nursing Home in Wisconsin. On the basis of its view of Orthokinetics' answers to interrogatories and Kazik's trial testimony, the district court concluded that the chair taken to Southern Colony had all the elements of claims 5 and 6. The court stated that the "only testimony to the contrary, certain ambiguous remarks by Gaffney, contradict Orthokinetics' interrogatory answers." The court did not cite the record or otherwise identify the "remarks" referred to.

The district court then determined that the evidence "unmistakably reveals that the purpose of the trips to Southern Colony and other institutions was to commercialize the scoliosis pad chair," (though the jury made no finding on the purpose of the trips) and thus Orthokinetics was "not entitled to the 'experimental use' exception" (on which the jury also made no finding). Because there was insufficient evidence presented concerning the chairs brought to institutions other than Southern Colony, we mention those chairs no further.

The district court focused on evidence in support of Safety's contentions, rather than on evidence in support of the jury's findings. That approach constitutes reversible legal error, particularly where, as here, it involves a virtual disregard of substantial evidence on which the jury could reasonably have reached a contrary determination.

In referring to the evidence in support of the jury's verdict, the district court dismissed it as being "ambiguous". In that characterization, the district court lost sight of the rules, i.e., that resolution of ambiguities (assuming they existed) is a role assigned the jury, and inferences are to be drawn in favor of the nonmovant, Orthokinetics. Thus the court's dismissal of the evidence relied on by the jury as merely "ambiguous" was further legal error.

Orthokinetics points to substantial evidence showing that the Southern Colony chair lacked, among other things, a head restraint coacting with scoliosis pads with vertical adjustability, and that that chair's entire supporting structure and pad adjusting system was completely changed after the trip to Southern Colony. Alternatively, Orthokinetics challenges the district court's independent determination that it had not established that that chair was taken to Southern Colony for experimental purposes.

Focusing on its *own* evidence, Safety responds that "neither contention [of Orthokinetics] is supported by the evidence as a whole," thereby indicating a misunderstanding of our appellate role. If we were to determine what the "evidence as a whole" supports, there would be no need for trials or for Rule 50(b). Indeed, Safety's entire argument on appeal reflects its misunderstanding of the rules of Civil and Appellate Procedure governing a jury's role, a district court's role in reviewing motions for JNOV, and this court's role in reviewing that determination. Hence, acceptance of Safety's approach would not only violate established standards of review, but would render a jury impotent.

Safety concedes that the parties submitted evidence on both sides of each issue. Safety then attacks Orthokinetics' evidence, which is not at issue. As above indicated, Safety bore the burden under 35

U.S.C. § 282, and the jury had the right to reject *its* evidence as insufficient to carry that burden. Under those circumstances, this court may determine only whether the evidence the jury could have believed in making its critical findings was substantial. Because a jury must by definition be permitted to accept some probative evidence and reject other probative evidence, we may not decide whether we would as jurors have found Orthokinetics' evidence, in Safety's words, "believable in light of the evidence as a whole." This is not a case in which there was no evidence in support of a jury's finding, or one in which the only evidence relating to a finding was contrary to that finding. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1550, 220 USPQ 193, 200 (Fed.Cir.1983) ("the jury finding that there was 'no prior art' could not possibly stand in the face of the numerous clearly relevant prior art patents in the trial record").

As too often occurs, the parties here have difficulty restricting themselves to the language of the claims. In distinguishing the Southern Colony chair, for example, Orthokinetics cites a structural feature, "shown" in the patent and a feature that was later modified; yet those features are not found as limitations in the claims.

■ There is, however, substantial evidence that the Southern Colony chair did not have the claimed elements "a head restraint which coacts with the scoliosis pads" or a "head restraint which comprises pads which embrace the head." It is clear that the jury could have so concluded on the evidence presented to it. Gaffney testified as to that difference, and the exhibits showing the Southern Colony chair fully support that testimony. Moreover, Kazik did not testify, and Orthokinetics' interrogatory answers did not state, that that chair had a head restraint coacting with the pads. Whether there may or may not have been evidence that might have supported a contrary conclusion is simply irrelevant. Because there was substantial evidence supporting it, the jury's determination that there was no offer for sale or public use of

the *claimed* invention should not have been disturbed. The judgment NOV on the on sale or in public use bar must be vacated and judgment must be entered on the jury's verdict.

Because there was substantial evidence on which a reasonable jury could have found that Safety failed to prove an offer for sale or public use of the claimed invention, we need not discuss the district court's independent determination that Orthokinetics had not established an experimental purpose in the trip to Southern Colony. In light of the instructions given the jury, moreover, it must be concluded that any consideration it gave the question of experimental purpose was resolved by the jury in Orthokinetics' favor. Nonetheless, for the benefit of the parties, we note that Orthokinetics did come forward with evidence of an experimental purpose sufficient to have convinced the jury that even the possibility of a public use bar had been "negated". *TP Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984); *see also In re Smith*, 714 F.2d 1127, 218 USPQ 976 (Fed.Cir. 1983).

Gaffney testified at trial that the purpose of the trip to Southern Colony was to "test [the chair] with some handicapped children to see if it was ready" and "to see if the chair was ready to be commercialized and if it would do the job we wanted it to do." The jury had the right to construe that testimony as establishing that Orthokinetics was still in an experimental phase when the visit was made to Southern Colony. Whether Kazik's statement that the trip was to see "the scope of the market" might support a contrary conclusion is of no moment in the course of considering a motion for JNOV. The district court's characterization of Kazik's and Gaffney's testimony as "undisputed" is but an indication that the jury was entitled to resolve a conflict, if any existed, between them, and that any inferences to be drawn from that

testimony must be drawn adversely to Safety.

### (ii) *Printed Publication*

The jury found (question No. 26) that Safety failed to prove that the chair claimed in the '586 patent was present in its entirety in Kamenetz, *The Wheelchair Book: Mobility for the Disabled* (1969) (*The Wheelchair Book*). The district court held that *The Wheelchair Book* "clearly discloses" all five elements of claims 5 and 6 of the '586 patent.

Orthokinetics' witnesses testified that the structure disclosed in *The Wheelchair Book* does not include "a head restraint which coacts with the scoliosis pads to exert therapeutic pressure on the spine," as set forth in the claims, particularly because the "head rest" in *The Wheelchair Book* is only a head rest and not a "head restraint" at all. A reasonable jury could clearly have found from that testimony that *The Wheelchair Book* does not anticipate the claimed inventions because it discloses no "head restraint" and certainly no "head restraint which coacts with the scoliosis pads to exert therapeutic pressure on the spine."

■ The district court correctly determined that *The Wheelchair Book* shows "headrests, headcushions, headwings and special head supports (including slings, caps, and collars)." That the reference shows those items, however, is simply no basis for finding anticipation. The claims require "head restraints" that are not shown by the reference. The district court was in no position to conclude that headwings embrace the head like a head restraint. Orthokinetics' expert, Professor Cherry, testified that headwings normally "support" the head, but do not "restrain" it. Because anticipation requires the disclosure in a prior art reference of each and every element as set forth in the claim, *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir. 1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984), *The Wheelchair Book* cannot anticipate the claimed

inventions set forth in claims 5 and 6. *See RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 221 USPQ 385 (Fed.Cir.), *cert. dismissed*, 468 U.S. 1228, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984).

There being substantial evidence capable of supporting the jury's finding of no anticipation, and thus a failure of Safety to prove anticipation, the granting of Safety's motion for JNOV on anticipation by *The Wheelchair Book* must be reversed.

### (iii) *Obviousness*

The jury concluded (question Nos. 27–29) that Safety had failed to prove by clear and convincing evidence that the inventions set forth in claims 5 and 6 would have been obvious to persons of ordinary skill in any of a number of arts, including a person "with mechanical skills who has the knowledge of the needs of handicapped children." The district court said that "[t]he jury's answers to [those questions] were without foundation in the evidence."

Again the district court focused on evidence in support of Safety's burden. Noting that Orthokinetics' disclaimer of claims 1–4 was in light of U.S. Patent No. 3,640,-571, to Michael Keropian (Keropian), that Keropian disclosed all the elements recited in claims 1–4, and finding that *The Wheelchair Book*, H. Willard & C. Spackman, *Occupational Therapy* (4th ed. 1971), and U.S. Patent No. 3,269,768 to John C. Kinney (Kinney) disclose "head restraints", the district court concluded that it would have been obvious to add the "headrests to the Keropian scoliosis system, or to add the Keropian vertically adjustable torso system to the Kinney head rest and chair mechanism." With those references, the court concluded, "a person of ordinary skill in the art ... would easily have been able to produce the structure defined by the ['586] patent."

Acceptance of the district court's foregoing analysis would make the conduct of the jury trial a pointless exercise. In accord with its instructions, the jury necessarily concluded that the combining of indi-

vidual items picked from the references as later done by the district court, would not have produced the claimed inventions or would not have been obvious when the invention was made. No basis or reason exists in the record for the district court to have substituted its contrary conclusion. The jury heard the testimony of Safety's own witness, Professor Cherry, who testified on the improvements contributed in the '586 patent. Those improvements did not consist of a mere combining of a "head rest" with Kinney's scoliosis system; they contributed a *coaction* between the pads and a head *restraint* to provide therapeutic pressure at three points. Moreover, that the claims do not contain the phrase "three-point positioning" is not material, the coaction between the pads being effective to produce that result. *See In re Antonie,* 559 F.2d 618, 619, 195 USPQ 6, 8 (CCPA 1977) (claims need not recite inherent advantages relied on for patentability).

Moreover, the district court's analysis employed an inappropriate "would have been able to produce" test. The statute, § 103, requires much more, i.e., that it would have been *obvious* to produce the claimed invention at the time it was made without the benefit of hindsight.

The jury also found (question Nos. 34–37) that Orthokinetics had proved by a preponderance of the evidence that certain objective indicia support the validity of the '586 patent, i.e., unsuccessful attempts by others, long felt need, and commercial success. Though the district court viewed those jury findings as "without factual foundation," the record reflects substantial evidence on which a reasonable jury could have made each of those findings.

Because the district court erred in setting aside the jury's verdict that the inventions set forth in claims 5 and 6 would not have been obvious, the grant of Safety's motion for JNOV on the validity of the '586 patent must be reversed.

### D. *The '867 Patent*

#### (i) *Indefiniteness*

The jury found (question No. 51) that Safety failed to prove by clear and convincing evidence that the '867 patent was invalid because of claim language that does not particularly point out and distinctly claim the invention. 35 U.S.C. § 112, 2d ¶. The district court determined otherwise and granted Safety's motion for JNOV.

Claim 1, from which the rest of the claims depend, contains the limitation: "wherein said front leg portion is *so dimensioned* as to be insertable through the space between the doorframe of an automobile and one of the seats thereof."

Noting the testimony of Orthokinetics' expert, Mr. Hobbs, who said the dimensions of the front legs depend upon the automobile the chair is designed to suit, the district court stated:

> In response to this testimony, which clearly and convincingly establishes that claim 1 of the ['867] patent does not describe the invention in "full, clear, concise and exact terms," Orthokinetics points only to the conclusory statements of Hobbs, Gaffney and expert witness William McCoy, Jr., that the patent is, in fact definite. These conclusory statements are not an adequate basis for the jury to reject Safety's defense. The undisputed, specific testimony of Gaffney and Hobbs demonstrates that an individual desiring to build a non-infringing travel chair cannot tell whether that chair violates the ['867] patent until he constructs a model and tests the model on vehicles ranging from a Honda Civic to a Lincoln Continental to a Checker cab. Without those cars, "so dimensioned" is without meaning.

The foregoing statement employs two measures impermissible in law: (1) it requires that claim 1 "describe" the invention, which is the role of the disclosure portion of the specification, not the role of the claims; and (2) it applied the "full, clear, concise, and exact" requirement of the *first* paragraph of § 112 to the claim, when that paragraph applies only to the disclosure portion of the specification, not to the claims. *Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 453, 227

USPQ 293, 297 (Fed.Cir.1985). The district court spoke, inappropriately, of indefiniteness of the "patent," and did not review the *claim* for *indefiniteness* under the *second* paragraph of § 112.

■ A decision on whether a claim is invalid under § 112, 2d ¶, requires a determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specification. *Seattle Box Co. v. Industrial Crating & Packing Inc.*, 731 F.2d 818, 826, 221 USPQ 568, 574 (Fed.Cir.1984); *In re Marosi*, 710 F.2d 799, 803, 218 USPQ 289, 292 (Fed.Cir.1983).

■ It is undisputed that the claims require that one desiring to build and use a travel chair must measure the space between the selected automobile's doorframe and its seat and then dimension the front legs of the travel chair so they will fit in that particular space in that particular automobile. Orthokinetics' witnesses, who were skilled in the art, testified that such a task is evident from the specification and that one of ordinary skill in the art would easily have been able to determine the appropriate dimensions. The jury had the right to credit that testimony and no reason exists for the district court to have simply discounted that testimony as "conclusory".

The claims were intended to cover the use of the invention with various types of automobiles. That a particular chair on which the claims read may fit within some automobiles and not others is of no moment. The phrase "so dimensioned" is as accurate as the subject matter permits, automobiles being of various sizes. *See Rosemont, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547, 221 USPQ 1, 7 (Fed.Cir.1984). As long as those of ordinary skill in the art realized that the dimensions could be easily obtained, § 112, 2d ¶ requires nothing more. The patent law does not require that all possible lengths corresponding to the spaces in hundreds of different automobiles be listed in the patent, let alone that they be listed in the claims.

Compliance with the second paragraph of § 112 is generally a question of law. *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 619, 225 USPQ 634, 636 (Fed.Cir.), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985). On the record before us, we observe no failure of compliance with the statute, and thus no basis on § 112 grounds for disturbing the jury's verdict. The district court's grant of Safety's motion for JNOV for claim indefiniteness was in error and must be reversed.

(ii) *Obviousness*

The jury made numerous findings (question Nos. 39–48) all in support of its conclusion that Safety failed to prove by clear and convincing evidence that the inventions set forth in claims 1–5 of the '867 patent would have been obvious when they were made in view of the prior art to one of ordinary skill in the art.

Having outlined the prosecution history of the '867 reissue patent, the district court stated:

> Analysis begins with Gaffney's concession to the [U.S. Patent and Trademark Office] that [U.S. Patent No. 1,693,633 issued to Sarah Allen (Allen)] fully anticipated the original Gaffney patent, rendering that patent void under § 102. Therefore, the only novel aspects of the reissue patent [i.e. the '867 patent] claims are those portions of such claims which differ from the language of the original patent. Claim 1 added to original Claim 1 a "retractor means for assisting the attendant in retracting said rear wheel assembly ... while the front leg is supported on the automobile...."

The district court quoted the language added by reissue in claims 2–5, *supra,* and focused on the differences between the reissued '867 claims and those of the original '229 patent. Claims 3–5 were also characterized as adding "minor details."

It is not altogether clear from the passage quoted above whether the district court was comparing the claims of the '867 patent with Allen or with the original pat-

ent. A careful reading of the district court's opinion, and its amendments, however, makes clear that the claims of the original patent were applied as prior art against the '867 patent. That was legal error for the reasons discussed in *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137, 227 USPQ 543, 546–47 (Fed.Cir. 1985), and Safety's attempt to distinguish that case is unpersuasive.

If the district court compared the '867 claims with the Allen patent, that comparison was based on an erroneous presumption, i.e., that Gaffney made a "concession" that Allen anticipated the claims of the original patent. Gaffney's reissue oath stated only that he believed "the original patent to be wholly or partly inoperative or invalid because claims 1 and 11 are unpatentable over [Allen]." 35 U.S.C. § 251; *see* 37 C.F.R. § 1.175(1) (1985); *Manual of Patent Examining Procedure* 1414 (5th ed. 1983). That is not, as Safety calls it, a "binding admission" of anticipation. In fact, even a cursory review of the Allen patent shows on its face that the jury could readily have found that it does *not* disclose each element of Gaffney's original patent.

The district court stated (underscoring indicates amendments adding to the court's original opinion; brackets indicate amendments deleting from the court's original opinion):

Given the jury's findings with respect to the level of ordinary skill in the art, the proper scope and content of the prior art and its details as summarized above, and assuming that the jury's general verdict constitutes a sufficient finding concerning the differences between the prior art and the Gaffney reissue patent claims, the question for this Court is whether any reasonable basis existed for [finding those differences] *their finding.* On consideration, it is eminently clear that no such basis exists—that is, that all the differences between claims 1 through 5 of the Gaffney reissue patent [are] *and the prior art are such that the claimed invention as a whole would have been* obvious in light of the prior art *to one of ordinary skill in the art at the time of the Gaffney invention.* [Footnotes omitted.]

The district court's amendment changing "the differences are obvious" to "the claimed invention as a whole would have been obvious to one of ordinary skill at the time of the invention" substituted the correct statutory criteria, § 103, for the unauthorized "differences are obvious" standard. Despite that change, however, it is clear from the entire record and from a study of the amended opinion in its entirety, that the court substituted its view for that of the jury on the basis of its belief that the presence of individual elements in separate prior patents required a conclusion of obviousness.

The court concluded that (emphasis added):

clear and convincing evidence demonstrates that in 1972 the holder of a college degree in engineering with experience in the wheel chair fields, presented with the Allen patents and the other patents described above, would doubtless have been *able* to produce the structure defined in claims 1 through 5 of the Gaffney reissue patent; *no probative evidence to the contrary* was presented to the jury. The *prior art suggests the combination both expressly and by implication,* and *no original new* patent's *result* is achieved which is not suggested by the combinations. Applying the *Railroad Dynamics* test, this Court concludes that the jury's implied conclusion that there were differences between the prior art and the claims in issue is unsupported by substantial evidence.

As it did in respect of the '586 patent, the court applied its *"able* to produce" standard in place of the statutory "obvious" standard of § 103. There was probative evidence in support of the jury's conclusion (testimony of Hobbs, Gaffney, Kazik, Inouye, Pivacek). Neither the court nor any witness identified what in the references suggested their combination or what in the references would produce the results of the claimed inventions.

It is unclear whether the district court believed there were *no* differences between the claimed inventions of the '867 patent and the prior art. Though the court listed no differences, it is *undisputed* that there are at least there differences: the combination of legs as lever for loading the chair into an automobile and the retraction of the rear wheels by the attendant while the patient remains in the chair. The sole question, therefore, is whether that difference, which we must presume was found by the jury, constituted substantial evidence in support of its nonobvious conclusion.

A review of each of the five prior art references establishes unequivocally that there was substantial evidence in support of the jury's implied findings of those differences. That evidence plus the objective evidence of nonobviousness (commercial success, failure of others, long felt need) supply a fully adequate basis on which a reasonable juror could have concluded that the subject matter as a whole of the inventions claimed in the '867 patent would not have been obvious to one of ordinary skill in the art. Neither the record nor the district court's opinion provides a basis for the substitution of a conclusion to the contrary. Therefore, the district court's setting aside of the jury's verdict upholding claims 1–5 of the '867 patent must be reversed.

#### (2) *Infringement*

The jury found (question Nos. 1–4) that Orthokinetics had met its burden of proving by a preponderance of the evidence that the accused chairs constituted infringement of claims 5 and 6 of the '586 patent. The testimony of Gaffney and Inouye, which supports that finding, faced no cross-examination and went unrebutted by Safety. The district court correctly denied Safety's motion for JNOV on infringement of the '586 patent.

Safety's sole argument on appeal is directed to matter extraneous to claims 5 and 6 of the '586 patent and is clearly without merit.

The jury found (question No. 15) that Orthokinetics had proved by a preponderance of the evidence that the accused chairs constituted infringement of claims 1–5 of the '867 patent. Safety sought JNOV on this issue, arguing that the claims must be limited to a rigid front leg portion extending to the floor, or to a front leg portion having a caster and a caster board fixedly mounted thereon, the leg portion being no wider than 9½ inches at the caster board.

Because Orthokinetics' completely contrary testimonial evidence was fully adequate to support the jury's findings, the district court correctly denied Safety's motion for JNOV on infringement of the '867 patent. For the same reason, Safety's motion for new trial on infringement was properly denied.

#### (3) *Personal Liability for Infringement*

The jury found (question Nos. 5–10, 18–23) that Chipman, Cole and Pivacek were personally liable for acts of direct infringement and for inducing infringement of both patents.

The district court held as a matter of law that, because the jury could not have reasonably found the corporate officers liable for willful infringement, it could not find them personally liable for any infringing acts of the corporations. In attempting to support that holding, Safety argues that good faith belief in invalidity, based solely on a dealer's report that a district court had held the original of the '867 patent invalid, precludes a finding of *any* personal liability. Because neither proposition has any basis in law, we must reverse the district court's grant of Safety's motion for JNOV on the corporate officers' personal liability.

The jury found the corporate officers liable for direct infringement, 35 U.S.C. § 271(a), as well as for inducing infringement, § 271(b). The district court's opinion did not treat the finding on inducement, but dealt only with general principles involved in imposition of personal liability for acts of a corporation. However, it is well settled that corporate officers who

actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481, 227 USPQ 435, 437 (Fed.Cir.1985).

■ Corporate officers are presumably aware of what they are doing, and in that sense they can be said to have acted "willfully." However, that does not mean that their acts must rise to the level recognized by the law as constituting willful infringement before they can be liable for infringement by their corporation. Hence the district court erred in positing willful infringement as a prerequisite for the imposition of personal liability for the corporation's direct infringement.

To determine whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil.

■ Infringement is a tort, *Carbice Corp. v. American Patents Development Corp.*, 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819, 8 USPQ 211, 213 (1931), and officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act. *See generally* 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1135 (rev. perm. ed. 1975). The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement. *See, e.g., White v. Mar-Bel, Inc.*, 509 F.2d 287, 185 USPQ 129 (5th Cir.1975); *Rex Chainbelt, Inc. v. General Kinematics Corp.*, 363 F.2d 336, 150 USPQ 319 (7th Cir.1966); *see generally* D. Chisum, *Patents*, § 16.06, at 16–76 to 16–85 (1986).

■ The evidence established the makeup and control of STC and Entron. Pivacek testified that he was at all material times the President and sole stockholder of Entron and that he elected its Board of Directors. He also testified that he is the President of STC and that he, Cole, and Chipman held all of STC's directorships and owned all of the stock in STC. The evidence firmly establishes that Pivacek, Cole and Chipman were directly responsible for the design and production of the infringing chairs and that they were the only ones who stood to benefit from sales of those chairs. That evidence was fully sufficient to support the jury's imposition of personal liability on Pivacek, Cole, and Chipman for the direct infringement of STC and Entron and for STC's contributory infringement. The district court's setting aside of the jury's findings on personal liability must therefore be reversed.

### (4) *Willful Infringement of the '867 Patent*

■ Fed.R.Civ.P. 50(a) states that a "motion for a directed verdict shall state the specific grounds therefor." Rule 50(b) states that "a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered *in accordance with his motion for a directed verdict.*" A specific reference to an issue in a motion for JNOV cannot preserve that issue for appeal where that issue was not specifically included in a motion for directed verdict made before the jury retired to consider its verdict. *See, e.g., Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 387, 222 USPQ 929, 931 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985).

Faced with its failure to have moved for directed verdict on willful infringement, Safety argues that its motion for directed verdict on infringement encompasses willfulness. That argument is without merit. Infringement and willful infringement are not the same thing, and Rules 50(a) and 50(b) mandate specificity.

Alternatively, however, Safety says Orthokinetics cannot raise on appeal Safety's failure to include willfulness in its motion

for directed verdict because Orthokinetics never objected to its inclusion in Safety's motion for JNOV before the district court.

Orthokinetics' reliance here on a page in its brief on the motion is insufficient because that page is not of record before us. Moreover, Orthokinetics' oral statements to the district court indicate that it never intended to contest the inclusion of the issue of willfulness in Safety's JNOV motion. Though the district court might well have refused consideration of willfulness on the motion for JNOV in light of Rule 50(b), it did not. In view of Orthokinetics' failure to raise an objection before the district court, we will consider the issue. *Cox v. City of Freeman, Missouri*, 321 F.2d 887, 891 (8th Cir.1963).

The district court determined that, because Safety was told by a dealer of a district court's ruling in another case that the original '229 patent was invalid, (*Palmer v. Orthokinetics, Inc.*, 197 USPQ 207 (C.D.Cal.1977), *rev'd*, 611 F.2d 316, 204 USPQ 893 (9th Cir.1980)), no reasonable and fair minded juror could have found willful infringement, and set aside the jury's findings that STC, Entron, Cole, and Chipman willfully infringed the '867 patent.

A finding of willful infringement is based on a totality of the circumstances. *See, e.g., Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1579–80, 230 USPQ 81, 90–91 (Fed.Cir.1986) and cases cited therein. It is not necessary to determine which combination of facts, among those established by substantial evidence at trial and recognized by this court as capable of contributing to a willfulness finding, were relied upon by the jury. This court, and the district court on the motion for JNOV, must uphold the jury determination of willfulness if there is any set of facts supported by substantial evidence and capable of supporting that jury determination. *See, e.g., Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 619, 225 USPQ 634, 636 (Fed.Cir.), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512, 220 USPQ

929, 936 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

In this case, substantial evidence supports the jury's finding (question No. 24) of willful infringement. The evidence shows that Safety did not consult an attorney until after Orthokinetics initiated this action. The district court's view that Safety could have relied on a dealer's report of a district court ruling in the *Palmer* case that the original '229 patent was invalid and thus need not have consulted an attorney is insufficient in this case to set aside the jury's finding of willful infringement. Had Safety relied on that prior district court ruling, one might expect that it would have sought counsel when Orthokinetics informed Safety that that ruling had been reversed on appeal. *See Palmer v. Orthokinetics, Inc.*, 611 F.2d 316, 204 USPQ 893 (9th Cir.1980), *rev'g*, 197 USPQ 207 (C.D.Cal.1977). Instead, Safety merely continued to infringe. Moreover, Safety never replied to any of the letters sent by Orthokinetics and declined Orthokinetics' invitation to participate as a protester in the reissue proceedings.

The jury could properly have viewed the aforementioned evidence as sufficient to establish Safety's complete disregard of Orthokinetics' patent rights. Therefore, the district court's grant of JNOV on willfulness must be reversed.

The corporate officers being personally liable for the acts of the corporations, and the corporations being liable for willful infringement, the jury's finding that Cole and Chipman are willful infringers must be upheld.

### (5) *Patent Misuse*

Because no prior art anticipated the claims of the '586 patent, Safety's assertion that Orthokinetics is guilty of patent misuse for asserting a patent, the '586 patent, that it knew was invalid under § 102(b), is without merit.

With respect to the '867 patent, the district court deemed Safety's confused series of assertions, involving the settlement agreement in the *Palmer* case and

Palmer's customer, unworthy of analysis and insufficient to overcome the jury's finding (question no. 52) which the district court found to have been supported by substantial evidence. We agree.

The district court correctly denied Safety's motion for JNOV on patent misuse and Safety's motion for a new trial on that issue.

*(6) Conditional Grant of a New Trial*

█ This court must review a denial or grant of a motion for a new trial under an abuse of discretion standard. *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 740–41, 230 USPQ 641, 645 (Fed.Cir.1986); *Railroad Dynamics Inc.*, 727 F.2d at 1512, 220 USPQ at 935. "That question turns on whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427, 231 USPQ 276, 280 (Fed.Cir.1986); *see Witco Chemical Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1548, 229 USPQ 188, 190 (Fed. Cir.), *cert. dismissed,* — U.S. —, 107 S.Ct. 258, 93 L.Ed.2d 241 (1986).

The district court stated that "a new trial is compelled solely by the standards set forth in the Federal Circuit's post-trial *Structural Rubber Products [Co. v. Park Rubber Co.*, 749 F.2d 707, 223 USPQ 1264 (Fed.Cir.1984) ] case, when read in conjunction with applicable Sixth Circuit law on Fed.R.Civ.P. 49(a)." The district court derived that "Sixth Circuit law" exclusively from "reading liberally," as it said, *Sakamoto v. N.A.B. Trucking Co.*, 717 F.2d 1000, 1006 (6th Cir.1983).

More specifically, the district court concluded that a new trial would be in order because: (1) the parties "were prejudiced by delivering closing arguments without the benefit of a final—or even a substantially completed—version of the special verdict," citing *Sakamoto;* (2) the jury instructions and special verdicts failed to set forth what specific facts had to be found to support a general verdict on validity or infringement, citing *Sakamoto* and *Structural Rubber;* and (3) "substantial injustice ensued from [the court's] efforts to determine the appropriate role of judge and jury at the same time that the Federal Circuit was generating a series of decisions examining the same topic." With respect to reason (3), the district court determined:

Had counsel been aware that factual issues on validity were being submitted to the jury for binding verdicts, they might well have made different submissions, proposals and objections with respect to both the jury instructions and the special verdict. And had this Court been aware that the validity verdict would be binding, it certainly would have taken a different approach to the validity instructions and verdict.

The district court's reasons for a new trial are based on a speculative and overly expansive view of the case law. Moreover, it does not point to any specific flaws in the instructions as given, or what different proposals, objections, and approach would have been taken or justified.

Regarding reason (1), the *Sakamoto* court held that "the disclosure prior to final argument of at least the *substance* of the Rule 49(a) special verdict interrogatories and supplemental instructions is mandatory." 717 F.2d at 1006 (emphasis added). That court noted "that it may be an abuse of discretion to fail to show the Rule 49(a) interrogatories to counsel in advance of argument where, because of exceptional circumstances, such as the complexity of the case, unfairness would otherwise result." However, the *Sakamoto* court determined that the appellant had shown no prejudice from the district court's failure to disclose the additional interrogatory before the summation. Noting that counsel's failure to object or request further argument, and everyone's awareness of the issue represented by the additional interrogatory, established an absence of prejudice, the Sixth Circuit affirmed the district court's *denial* of a new trial.

█ Whether the present case may be categorized as falling within Rule 49(a) or Rule 49(b), *Sakamoto* makes clear that Safety must show actual prejudice, which it

failed to do. Safety knew what the issues were from the filing of the pretrial briefs onward and certainly when it assisted with the jointly-prepared jury instructions before closing argument. Moreover, like the appellant in *Sakamoto,* Safety made no objection and no request for further argument.

Regarding reason (2), the district court determined that *Sakamoto* "indicates that a general verdict included together with special verdict questions is impermissible, or at best null." For the reasons set forth above, we do not read *Sakamoto* for that proposition.

The district court said *Structural Rubber* mandates "that a general verdict is valid only if it is the product of instructions which clearly lay out alternative mandatory general verdicts when specific facts are found." In this case, however, there was no objection to the instructions as failing to lay out alternative verdicts based on the evidence adduced.

In *Structural Rubber,* this court remanded for a partial new trial because instructions were given on issues on which no evidence was presented. The alternative mandatory verdict instructions discussed in *Structural Rubber* are desirable and facilitate both jury deliberations and appellate review. This court did not hold in that case that every general verdict is invalid if that particular type instruction was not given. Nor did it hold that a new trial is compelled in such instances when the parties have agreed to the instructions given.

Moreover, in the present case, the jury did not return a general verdict ("we find for the plaintiff"). It returned a series of hybrid special verdicts on each issue with answers to questions on what had and had not been proven.

In all events, non-objecting parties should not be forced to retry the case merely because the instructions and the form of verdict obtained from the jury did not match those involved in any earlier and different case, particularly where the party who failed to convince the jury has shown no prejudice emanating from the instructions given. *See Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604, 615, 222 USPQ 654, 662 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984).

Under Fed.R.Civ.P. 51, the failure of Safety to proffer timely, specific objections to the instructions precludes our consideration of any such objection on appeal absent great injustice. *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985); *Structural Rubber,* 749 F.2d at 714 & n. 3, 223 USPQ at 1269 & n. 3. Safety's sole timely objection may have been (assuming it was brought to the court's attention before the jury retired, *see Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit,* 738 F.2d 163, 167 (6th Cir.1984)) to the instruction stating the irrelevancy of the doctrine of prosecution history estoppel when the jury finds literal infringement. The district court correctly determined that instruction to have been proper. *See, e.g., Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1571, 219 USPQ 1137, 1141 (Fed.Cir.1983). There is no merit in Safety's present contention that that instruction misled the jury into not construing the claims in light of the prosecution history, particularly when other instructions told the jury to do precisely that. Instructions must be read in their entirety. *See, e.g., Batesole v. Stratford,* 505 F.2d 804, 809 (6th Cir.1974); *Gradsky v. Sperry Rand Corp.,* 489 F.2d 502, 503–04 (6th Cir.1973).

Regarding reason (3), neither Safety nor the district court has indicated how or why the *jury* might have made different findings or reached different conclusions if *Safety* or the *court* had known the jury's verdicts on obviousness would be binding. Nothing of record indicates that either party or the court expected that any jury verdict would be merely "advisory".[1] This

---

1. Nor is there any indication in the record that the jury was told that it would be serving in merely an "advisory" capacity. That jurors are unlikely to appreciate the taking of weeks out of

court had made clear, *before* this trial, that jury verdicts in patent cases *are* binding. *See White v. Jeffrey Mining Machinery Co.*, 723 F.2d 1553, 1558, 220 USPQ 703, 705 (Fed.Cir.1983), *cert. denied*, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 49 (1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547, 220 USPQ 193, 197–98 (Fed.Cir. 1983). Having failed to carry its burden before one jury, Safety has shown no such actual prejudice as would warrant a second chance before a second jury and the consequent doubling of the burden on Orthokinetics and the district court.

The case was fully and fairly litigated, the instructions and interrogatories (to which Safety did not object) were jointly prepared and fully adequate to guide the jury in its consideration of the evidence presented. There exists no newly-discovered *material* evidence. A new trial would therefore be unwarranted. The district court's conditional grant of a new trial was an abuse of discretion and must be vacated.

## CONCLUSION

The judgment entered in response to those of Safety's motions for JNOV that were granted is reversed. The judgment entered on the jury verdict in light of the denial of Safety's other motions for JNOV is affirmed. The district court's denial of Safety's motion for a new trial on infringement and misuse is affirmed. The district court's conditional grant of a new trial on validity is vacated.

The case is remanded for entry of judgment on the jury's verdicts, for issuance of an appropriate permanent injunction against infringement by Safety, for an accounting, and for such further proceedings not inconsistent with this opinion as the district court may deem necessary.

AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART, AND REMANDED.

their lives, only to have the result of their close attention and deliberations treated as merely "advisory" may account for the extreme rarity

## APPENDIX

*Question 2*

Do you find that Orthokinetics has proved by a preponderance of the evidence that defendant, Safety Travel Chairs, Inc., has directly infringed the following claims of the ['586] patent by sale of Safety TranSporter Chair Models with adjustable scoliosis pads?

Please answer: "proved" or "not proved" as to each claim:

 Claim 5 *"Proved"*

 Claim 6 *"Proved"*

*Question 5*

Do you find that Orthokinetics has proved by a preponderance of the evidence that the defendant, Clarke Chipman, is personally liable for direct infringement of the ['586] patent?

Please answer: "Proved" or "not proved":

 *"Proved"*

*Question 24*

Do you find that Orthokinetics has proved by a preponderance of the evidence that the infringement of the ['867] patent by any of the following defendants was willful?

Please answer: "proved" or "not proved":

| Safety | *"Proved"* |
| Entron | *"Proved"* |
| William Cole | *"Proved"* |
| Clark Chipman | *"Proved"* |

*Question 31*

Have Safety *et al.* proved by clear and convincing evidence that the ['586] patent is invalid because the subject matter of claims 5 and 6 was publicly used or offered for sale more than one year before the December 4, 1972 filing of the ['586] patent application?

Please answer: "proved" or "not proved":

 *"Not proved"*

of use of advisory juries under Fed.R.Civ.P. 39(c).

*Question 40*

Do you find that Safety *et al.* have proved by clear and convincing evidence that the ['867] patent is invalid because the differences, if any, between the prior art and the claimed subject matter, taken as a whole, would not have been obvious to one of ordinary skill in the art at the time the claimed invention was made?

Please answer: "proved" or "not proved" as to each claim of the ['867] patent:

Claim 1 *"Not proved"*
Claim 2 *"Not proved"*
Claim 3 *"Not proved"*
Claim 4 *"Not proved"*
Claim 5 *"Not proved"*