**WITCO CHEMICAL CORPORATION,**
etc., Appellee/Cross-Appellant,

v.

**PEACHTREE DOORS, INC., etc.,**
**Mobay Chemical Corp., etc.,**
**Appellants/Cross-Appellees.**

**Appeal Nos. 85–972, 85–1453.**

United States Court of Appeals,
Federal Circuit.

March 24, 1986.

Maurice B. Stiefel, Hubbell, Cohen, Stiefel & Gross, P.C., New York City, argued for appellants/cross-appellees. With him on brief were Marc S. Gross, Ralph R. Palo, James A. Quinton and John S. Pratt, Kilpatrick & Cody, Atlanta, Ga.

Harold Haidt, Brooks, Haidt, Haffner & Delahunty, New York City, argued for ap-

pellee/cross-appellant. With him on brief were G.T. Delahunty, Charles G. Mueller, A. Felton Jenkins, Jr. and Bruce W. Baber, King & Spalding, Atlanta, Ga.

Before DAVIS, SMITH and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

This is an appeal from the judgment, after a jury trial, entered on December 4, 1984, amended December 10, 1984, by the United States District Court for the Northern District of Georgia, holding Witco Chemical Corporation's (Witco) U.S. Patent Nos. 3,846,347 ('347) and 4,248,975 ('975) (collectively called Witco's patents) not invalid and infringed by foam-forming systems and prepolymers sold by Mobay Chemical Corporation (Mobay) and used by Peachtree Doors, Inc. (Peachtree). We vacate the judgment and remand for a new trial.

## I. BACKGROUND

### THE INVENTIONS

The Witco patents relate to the preparation of a rigid shrink-stable polyurethane

1. Thermal insulation is measured by thermal conductivity, the K factor. The K factor is the measured amount of heat which will travel through a piece of material, one-inch thick, one-foot square, in one hour with a one degree Fahrenheit temperature rise.

2. The '975 claims alleged to be infringed by Mobay and the subject of this appeal are:
   1. A rigid shrink stable polyurethane foam having a K factor value of less than 0.22 and in which foam substantially all of the cells are closed, the closed cell content being at least 90 percent, the cells being fine uniform cells, and which foam is prepared from the reaction product of: (a) an arylene polyisocyanate and (b) an addition product of an alkylene oxide having at least three carbon atoms and a polyol having at least four hydroxy groups in the presence of a volatile blowing agent essentially consisting of a chlorofluoro-lower alkane.
   11. A rigid shrink stable polyurethane foam as defined in claim 10 wherein said chlorofluoro-lower alkane is trichloromonofluoromethane.
   The '347 claims alleged to be infringed by Mobay and the subject of this appeal are:

foam having good thermal insulating properties.[1] The polyurethane molecule is obtained by reacting a polyisocyanate with a polyester and polyether polyol containing at least two hydroxyl (-OH) groups. A prepolymer is the reaction product of an excess of an organic polyisocyanate and a polyether polyol, which has all of the hydroxyl groups reacted with the polyisocyanate. This prepolymer can be stored and used later to make the polyurethane.

To make a foam, a "blowing agent" must be present to form gas bubbles within the polyurethane during the reaction. The blowing agent can be either a reactive chemical or a physical foamant. For example, water is an example of a reactive chemical foamant and reacts with the isocyanate to release carbon dioxide gas *in situ*. On the other hand, fluorochloroalkanes are examples of physical foamants and are inert materials which vaporize at the temperature reached during the polyurethane polymerization reaction.

Under the Witco patents a foam is produced by reacting an arylene polyisocyanate with a polyether polyol and using a chlorofluoro-lower alkane as the blowing agent.[2]

1. A stable, highly branched prepolymer which is a polyurethane and is in liquid form, being dissolved in a solvent comprising a reactive organic polyisocyanate, said prepolymer being capable of being placed into the form of a rigid foam which has a K factor value of less than 0.22 and which foam has a closed cell content of about 90 percent, the cells being fine, uniform cells, said prepolymer comprising the reaction product of an excess of polyisocyanate and a polymeric hydroxy compound which compound is a polyalkylene oxide being the addition product of an alkylene oxide having at least three carbon atoms with a hydroxy compound having at least six hydroxyl groups, and said prepolymer containing reactive organic polyisocyanate contributing to the presence of unchanged isocyanato groups reactive to further polymerization, the said reactive polyisocyanate acting as said solvent.

5. A composition in accordance with claim 1 in which the polymeric hydroxy compound comprises a polypropylene oxide derived from a biose.

21. A liquid composition of matter comprising a mixture which comprises a blowing agent which consists of a volatile halogenated

Polyurethane foam-forming compositions can be sold as "foam chemical systems" which consist of two components, an "A" side and a "B" side. The "A" side contains the polyisocyanate. The "B" side contains a mixture of polyol, catalyst, and blowing agent. When the "A" and "B" components are mixed together they react to form a foam. The accused products of Mobay are foam-forming systems and prepolymers.

## THE PROCEEDINGS BELOW

Witco sued defendants Mobay and Peachtree for infringement of claims 1, 5 and 21 of the '347 patent and claims 1 and 11 of the '975 patent. Peachtree's infringement allegedly occurred through use of the Mobay products. The defense challenged the patents' validity under sections 102(g), 103 and 112 (best mode) and their enforceability because Witco failed to comply with the duty of disclosure during the prosecution of the patents.

After Witco presented its case, the district court granted a directed verdict for noninfringement for several of the accused products, leaving five prepolymers and two foam-forming systems for the jury to consider. The court also entered a directed verdict that Mobay neither actively induced infringement nor contributorily infringed the patents by selling and promoting certain designated organic compounds and foam chemical systems. Following presentation of defendants' case, the court entered a directed verdict that five prepolymers infringed claims 1 and 5 of the '347 patent. The two foam-forming systems were the only accused products remaining for consideration by the jury.

The jury, after six days of deliberations, answered special interrogatories pursuant to Fed.R.Civ.P. 49(b) pertaining to patent validity and enforceability and found the Witco patents valid but unenforceable because Witco breached the obligation of candor and good faith while prosecuting the patents. The jury was unable to answer the interrogatories on the infringement issue. The judge recalled the jury and instructed them to reconsider, whereupon the jury changed its unenforceability finding, but continued to be at an impasse with regard to the infringement issue. The jury was excused for an indefinite period. Three weeks later defendants moved for a mistrial arguing that the jurors were deadlocked and should be discharged. An additional three weeks passed before the jury was recalled and given additional instructions, whereupon the jury found infringement.

Defendants moved for judgment *non obstante veredicto* (JNOV) or a new trial contending that the patents were invalid, unenforceable and not infringed. Defendants also moved for the court to reconsider the directed verdict of infringement of claims 1 and 5 of the '347 patent. The court denied the motions.

Additional issues arise in the context of a license agreement. Prior to the issuance of either the '347 or '975 patents Witco's predecessor, Isocyanate Products, Inc., and Mobay entered into a patent license contract. At the conclusion of the liability trial, the jury found that Mobay had breached the agreement. On motion by Mobay, the court directed verdict for Mobay holding the contract agreement unenforceable as an agreement to agree. Witco asserts that absent an agreement, Mobay would have been an infringer for a longer period of time.

On this appeal, issues of validity, infringement and the enforceability of the

lower alkane containing chlorine and fluorine atoms admixed with a highly branched polyurethane which is reactive and which comprises the reaction product of an organic polyfunctional urethane-forming reactant being an organic polyisocyanate and a polymeric polyoxyalkylene ether which is the addition product of an alkylene oxide having at least three carbon atoms with a highly branched polyol having at least six hydroxyl groups, said reactive polyurethane being reactive to form a second but solid polyurethane which contains therein said halogenated alkane, said solid polyurethane being in the form of a rigid foam which has a K factor value of less than 0.22 and which foam has a closed cell content of about 90 percent, the cells being fine, uniform cells.

**1548**

license agreement are raised in addition to the district court's denial of defendants' motion for a new trial. Since our decision turns on the denial of defendants' motion for new trial, we address only this issue.

## II

## OPINION

The defendants' appeal from the denial of a mistrial and motion for new trial is now properly before this court. As is well known, such an appeal should generally be taken from the final judgment whereupon the erroneous denial of the motion for new trial is reviewed. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). In federal practice, new trials

> may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed.R.Civ.P. 59(a) (1985).

A motion for new trial at common law could be based on any number of grounds. Such a motion

> may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

*Montgomery Ward*, 311 U.S. at 251, 61 S.Ct. at 194.

■ In moving for a new trial defendants asserted that the court erred in charging the jury and in excusing the jury for six weeks. Defendants assert that the findings are not supported by substantial evidence or those findings cannot support the legal conclusions which were necessarily drawn by the jury in forming its verdict. The trial judge's denial of mistrial and failing to grant a new trial is reviewed only to determine whether he abused his discretion. *Fairmont Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933). We hold that he has.

■ Of the *Montgomery Ward* non-exclusive list of grounds for which a new trial may be granted, we deal here with improper coercion of the jury amounting to an unfair trial for defendants. A trial court should be wary not to actually or seemingly influence a jury to forego their conscientious convictions in order to reach a verdict when at an impasse. Improper conduct of the court that is prejudicial will warrant a new trial. *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *see generally*, 6A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 59.08[2], [4] (2d Ed. 1985).

After careful review of the trial record, an endeavor causing much agony to this court, we vacate this judgment and grant defendants' motion for a new trial on all issues. Following the seven-week trial on liability and deliberations on validity, enforceability and infringement, the jury answered thirteen pages of interrogatories. The patents were determined to not have been proved invalid and were found unenforceable. The jury was at an impasse as to infringement. After a request by the trial court to reconsider an apparent inconsistency between the answers to general and specific interrogatories concerning representations made to the U.S. Patent and Trademark Office, the jury found the patents enforceable; they remained at an impasse as to infringment.

■ The trial judge, recognizing the weariness of the jury, decided to excuse them indefinitely subject to recall. Ignoring counsels' request for establishing a date to reconvene, the jury was excused,

only to be recalled six weeks later, provided additional instructions, and sent to deliberate over the infringement questions. An infringement verdict was rendered promptly. This sequence of events *seemingly* coerced the jury into reaching *a* verdict, *any* verdict, for the sake of reaching *an* agreement, *any* agreement, in order to end the trial. *See United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (*ex parte* discussion between trial judge and jury foreman amounts to supplemental instruction relating to jury's obligation to return a verdict); *Lucas v. American Manufacturing Co.,* 630 F.2d 291 (5th Cir.1980) (a new trial was granted because the trial judge put a time limitation on the jury deliberations in view of an approaching hurricane). *United States v. Flannery,* 451 F.2d 880 (1st Cir.1971) (expressed disapproval of instruction suggesting that "the case must at some time be decided"); *Burroughs v. United States,* 365 F.2d 431 (10th Cir.1969) (entreating jury to strive toward a verdict by a certain time held reversible error).

█ Furthermore, it is inappropriate, in light of the evidence presented and arguments made at this trial, to have one jury return a verdict on the validity, enforceability and contract questions while leaving the infringement questions to a second jury. We reach this conclusion only after considering the totality of the circumstances and by answering: "How may the ends of justice be served?" *Constitution Pub. Co. v. Dale,* 164 F.2d 210, 213 (5th Cir.1947); *see also Williams v. Slade,* 431 F.2d 605, 609 (5th Cir.1970); *Slater v. KFC Corp.,* 621 F.2d 932, 938 (8th Cir.1980); *Dunlap v. G. & C. Towing, Inc.,* 613 F.2d 493, 497 (4th Cir.1980). A partial new trial is inappropriate and "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a new trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931) (issues not separable where in order to determine the amount of damages in a breach of contract it might be necessary for the jury to re-find the terms of the contract, or the date of formation or when it was breached).

█ Infringement is a question of fact to be determined by the jury. *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 221 USPQ 473 (Fed.Cir.1984). In order to determine infringement, the scope of disputed claims must be construed in light of the patent's specification and prosecution history. *Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir. 1985). Here the arguments against infringement are indistinguishably woven with the factual underpinnings of the validity and enforceability determinations and the subject matter of the contract. Consequently, the entire judgment is vacated and the case remanded for a new trial.

VACATED AND REMANDED.