NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LAMBETH MAGNETIC STRUCTURES, LLC,**
*Plaintiff-Appellant*

**v.**

**SEAGATE TECHNOLOGY (US) HOLDINGS INC., SEAGATE TECHNOLOGY, LLC,**
*Defendants-Cross-Appellants*

---

2023-1335, 2023-1346

---

Appeals from the United States District Court for the Western District of Pennsylvania in No. 2:16-cv-00538-CB, Judge Cathy Bissoon.

---

Decided: September 17, 2025

---

JEFFREY A. LAMKEN, MoloLamken LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JENNIFER ELIZABETH FISCHELL, RAYINER HASHEM; DENISE MARIE DE MORY, MICHAEL ELI FLYNN-O'BRIEN, RICHARD CHENG-HONG LIN, Bunsow De Mory LLP, Redwood City, CA.

DAVID J.F. GROSS, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, argued for defendants-cross-appellants.

Also represented by CHAD DROWN, KATHERINE S. RAZAVI,
KEVIN P. WAGNER.

————————————————

Before REYNA, SCHALL, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

Lambeth Magnetic Structures, LLC appeals a district
court judgment of noninfringement of its U.S. Patent
No. 7,128,988. Lambeth argues that the district court er-
roneously construed the claim term "uniaxial symmetry
broken structure." Seagate Technology (US) Holdings Inc.
and Seagate Technology, LLC cross-appeal, arguing that
the district court erred in denying judgment as a matter of
law on invalidity, because a reasonable jury could not have
found the patent enabled under 35 U.S.C. § 112. We deter-
mine that the district court's judgment of noninfringement
was premised on an erroneous claim construction of the
disputed claim term. We vacate the judgment of nonin-
fringement and dismiss the cross-appeal as improper. Be-
cause we determine that the proper construction of the
disputed claim term may affect the evidence and argu-
ments presented on enablement, we remand for a new trial
on both infringement and enablement under the proper
construction of "uniaxial symmetry broken structure."

BACKGROUND

I. The '988 Patent

Dr. David N. Lambeth ("Dr. Lambeth") originally as-
signed U.S. Patent No. 7,128,988 ("'988 patent") to Lam-
beth Systems. '988 patent; *see also* J.A. 30234. That
patent is currently assigned to Lambeth Magnetic Struc-
tures, LLC ("LMS"). J.A. 12585. The patent relates to "[a]
thin film magnetic structure, magnetic devices, and
method of producing the same." *Id.*, Abstract. One use
case for the invention is in "magnetic recording media" de-
vices, *id.* at 6:65–7:3, 32:33–34, such as hard disk drives

("hard drives"). *See* J.A. 24. In "a traditional hard disk system," a "magnetic head passes over the media data," i.e., the hard disk. '988 patent, 7:12–16, 35–56. To record information on the disk, the magnetic head can apply a magnetic field that alters the media data, *see id*. at 7:35–38; in this case, the head is referred to as a "recording head," *see id*. at 7:12–20. The patent is directed to a particular "thin film" magnetic material that can be used in such recording heads. *Id*. at 12:58–66.

The patent describes what it purports to be a unique structure for such a thin-film material. *See id*. at 12:58–13:18. Specifically, the patent describes the structure as including three features relevant to this appeal. The first feature is that the structure includes "at least one bcc-d layer which is magnetic." *Id*. at claim 1. A "bcc-d layer" is a layer of metallic crystals in which the metal atoms are arranged in a "body centered cubic" or a derivative thereof ("bcc-d" or "bcc'd") manner; thus, "bcc" refers to a type of crystal structure. *Id*. at 5:12–17, 14:64–67; *see* J.A. 24325. The patent provides that using a bcc-d layer increases "saturation magnetization[]" in comparison to layers consisting of other types of crystal structures, thereby "allow[ing] new devices to be constructed" with favorable properties such as "high magnetization." *Id*. at 13:2–8. According to Dr. Lambeth, for "magnetic recording heads," high magnetization allows the head to "put out a stronger field towards the media." J.A. 30138–39.

The second feature is that the bcc-d layer "form[s] a uniaxial symmetry broken structure." '988 patent, claim 1. "Uniaxial" as used in the patent refers to "uniaxial anisotropy." *See id*. at 1:45–60 (defining "uniaxial anisotropy"), 3:11–27 (referring to materials demonstrating uniaxial anisotropy as "uniaxial materials"). "Magnetic anisotropy" (or simply "anisotropy") occurs when a material can be more easily magnetized in a particular direction. *Id*. at 1:35–60. That is, the material has a "preferred direction, or directions, of [magnetic] orientation." *Id*. at 1:35–38. An

anisotropic material is uniaxial when it has a single direction, the "easy axis," along which magnetization is preferred, and a single different direction, the "hard axis," along which magnetization is not preferred, as the magnetization angle is rotated by 180 degrees from a physical axis. *Id.* at 1:35–60. In the context of a recording head, the patent explains that using a material that is uniaxially anisotropic allows the head to be magnetized to turn away from the media, i.e., the hard disk, after recording on it, to avoid "generat[ing] noise" that may inadvertently overwrite nearby areas of the media. *Id.* at 7:32–67. Dr. Lambeth testified that he aimed to create a head with properties such that, after recording on the media, the head "turns back, so it doesn't erase the media." J.A. 30143.

The third relevant feature required by the claims is that the structure is "symmetry broken." '988 patent, claim 1. A symmetry-broken structure refers to a subset of possible arrangements of the bcc-d "unit cells," which comprise the crystal lattice that makes up the structure. *Id.* at 11:33–49, 16:34–36. The bcc-d unit cells in the claimed structure can be oriented in one of six directions or "variants" over a hexagonal template. *Id.* at 13:39–42, 14:48–58. A "symmetry broken structure" occurs when the material does "not contain an equal amount of all six of" the "bcc-d variants." *Id.* at 23:38–41. According to the patent, "uniaxial behavior *can* result" from symmetry broken structure. *Id.* at 23:50–24:8 (emphasis added).

On appeal, the claims at issue are claims 1, 3, 6, 7, 9, 17, 19, and 27–29 of the '988 patent. Independent claim 1 is representative:

1. A magnetic material structure comprising:

a substrate;

at least one bcc-d layer which is magnetic, forming a **uniaxial symmetry broken structure**; and

> at least one layer providing a . . . textured hexago-
> nal atomic template disposed between said sub-
> strate and said bcc-d layer.

*Id.* at claim 1 (emphasis added).

## II. Procedural History

In 2016, LMS sued several hard drive manufacturers, including Seagate Technology (US) Holdings Inc. and Seagate Technology, LLC (collectively, "Seagate"), in the United States District Court for the Western District of Pennsylvania, alleging infringement of the '988 patent.[1] In the complaint, LMS alleged that Seagate's products "infringe at least claims 1 and 27 of the '988 patent, and dependent claims thereof, including claims 6, 7, 9, 11, and 13." J.A. 201.

In October 2017, the district court issued a *Markman* order. J.A. 1–21. The district court construed the claim term "uniaxial symmetry broken structure" as "a structure that is uniaxial *as a result of* the structure being symmetry broken." J.A. 18–20 (emphasis added).

In October 2018, Seagate moved, in relevant part, for summary judgment of invalidity due to inadequate written description and noninfringement under 35 U.S.C. §§ 112 and 271. *See* J.A. 22, 157. Concurrently, LMS moved for partial summary judgment in its favor on the issue of invalidity. *See* J.A. 23, 157. In June 2019, the district court issued a memorandum order that resolved Seagate's and LMS's cross-motions for summary judgment. J.A. 22–74. The district court found that genuine issues of material fact

---

[1]    The district court litigation also involved related complaints filed by LMS against Western Digital Corporation and its subsidiaries and against Toshiba Corporation and its subsidiaries. J.A. 196; *see* J.A. 1, 2 n.1. Those cases are not at issue in this appeal.

precluded summary judgment as to whether the '988 patent was invalid for inadequate written description and whether Seagate's accused devices infringed the '988 patent. J.A. 29–42. Thus, the district court denied Seagate and LMS's motions for summary judgment regarding written description and Seagate's motion for summary judgment of noninfringement. J.A. 73–74.

The district court held trial from April 4 to 14, 2022. On April 12, 2022, Seagate moved for judgment as a matter of law ("JMOL") on direct and indirect infringement, as well as infringement under the doctrine of equivalents. J.A. 31204–05. The district court granted JMOL with respect to infringement under the doctrine of equivalents. J.A. 31209. However, the district court did not grant JMOL as to direct or indirect infringement, because there was "sufficient evidence . . . that a reasonable jury could conclude that the plaintiff wins." *Id.* On April 13, 2022 LMS moved for JMOL on infringement and on Seagate's invalidity defenses, including lack of enablement under § 112. J.A. 31455–56. Concurrently, Seagate again moved for JMOL on the issue of infringement and additionally moved for JMOL on the issue of invalidity, including lack of enablement. J.A. 31456–58. The district court denied each party's motions as to infringement because there were "still issues of fact to be resolved by the jury with respect to that issue." J.A. 31458. The district court also denied each party's motion as to invalidity, including lack of enablement, because "the jury [could] certainly find that the patent is valid." *Id.*

On April 14, 2022, the district court issued a written order restating its denial of LMS's and Seagate's oral motions for JMOL as to infringement and invalidity (including for lack of enablement), respectively. *See* J.A. 134. The same day, the jury returned a verdict of noninfringement of claims 1, 3, 6, 7, 9, 17, 19, and 27–29 of the '988 patent, and a verdict of no invalidity for all those claims.

J.A. 84–85. The district court then entered judgment in favor of Seagate as to infringement. J.A. 87.

In May 2022, Seagate filed a renewed motion for JMOL on infringement and a conditional motion for a new trial, and LMS filed a renewed motion for JMOL on invalidity under § 112 and a motion for a new trial. J.A. 193. In November 2022, the district court denied the parties' renewed JMOL motions and motions for a new trial. J.A. 88–90.

LMS appeals, and Seagate cross-appeals.[2] We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### DISCUSSION

LMS argues that the district court misconstrued the claim term "uniaxial symmetry broken structure," and, thus, we should vacate the judgment of noninfringement and remand for a new trial on infringement. Seagate argues in its cross-appeal that it is entitled to JMOL of invalidity for lack of enablement. Seagate also conditionally argues that, if we vacate and remand for a new trial on infringement, we should also order a new trial on invalidity.

---

[2]    Prior to oral argument, LMS submitted a motion to dismiss Seagate's cross-appeal as improper because Seagate only "raised invalidity of the '988 patent as an affirmative defense" and "did ***not*** assert any counterclaim seeking a declaration of invalidity." Appellant Motion to Dismiss Cross-Appeal, 1–3 (emphasis in original). Seagate filed a response, and LMS filed a reply. Response to Motion to Dismiss Cross-Appeal; Reply in Support of Motion to Dismiss Cross-Appeal. We issued an order "deferr[ing] to the merits panel." Order, *Lambeth Magnetic Structures, LLC v. Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC*, Nos. 23-1335, 23-1346, at 2 (Fed. Cir. May 25, 2023) (ECF No. 20). We address LMS's motion herein.

## I. Claim Construction

LMS argues that the district court erred by construing the claim term "uniaxial symmetry broken structure" as a structure that is "uniaxial as a *result of* the structure being symmetry broken." Appellant's Opening Br. 29–30 (citation modified). Seagate counters that LMS waived its right to challenge this construction; that, regardless, the district court's construction was correct; and that any error in the construction was harmless. Cross-Appellant's Opening and Response Br. 33–51.

## A. Waiver

Seagate argues that LMS waived its right to challenge the district court's construction of "uniaxial symmetry broken structure" on appeal. Cross-Appellant's Opening and Response Br. 48–50. Seagate relies on statements in LMS's technical expert report and on LMS's response to one of Seagate's motions *in limine*. *Id.* We disagree with Seagate.

Generally, a party waives its challenge to a district court's construction of a claim term "by agreeing to that portion of the adopted construction." *Abbott Lab'ys v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1352 (Fed. Cir. 2003) (finding waiver where the party "stated during trial" that the "claim term is properly defined" (citation modified)). "When the claim construction is resolved pre-trial, and the patentee presented the same position in the *Markman* proceeding as is now pressed, a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008); *Top Brand LLC v. Cozy Comfort Co. LLC*, 143 F.4th 1349, 1355–56 (Fed. Cir. 2025).

First, Seagate argues that LMS agreed to the district court's construction of "uniaxial symmetry broken structure" and thus waived any challenge to it, as evidenced in LMS's technical expert report. Cross-Appellant's Opening and Response Br. 48–49. In the report, LMS's technical expert stated that, while "symmetry breaking can result in a material with intrinsic uniaxial anisotropy," such "[e]xternal sources of anisotropy . . . are distinct from the focus of the [']988 patent, which concentrates on and claims the invention of uniaxial anisotropy bcc-d thin film materials *as a result* of symmetry breaking." J.A. 12587 (emphasis added); *see* Cross-Appellant's Opening and Response Br. 48–49. We disagree with Seagate's assertion that this statement in the expert report constitutes a waiver of LMS's claim construction position on appeal. LMS's expert noted that he merely relied on the district court's construction of this term when formulating his technical conclusions. J.A. 12589–90. Thus, LMS's expert merely adopted the district court's claim construction for the purposes of providing testimony, but he did not agree to it.

Second, Seagate argues that LMS agreed with the district court's construction when it intentionally abandoned the position it initially advanced during claim construction. Cross-Appellant's Opening and Response Br. 49. Specifically, Seagate notes that, in response to one of Seagate's motions *in limine*, LMS stated that "[t]he Court's claim constructions do not require clarification" and that "LMS's experts applied those constructions and demonstrated that the ***bcc-d layer*** of the claims forms a uniaxial, symmetry broken structure that is uniaxial as a result of the symmetry broken structure." J.A. 18326 (emphasis in original); *see* Cross-Appellant's Opening and Response Br. 49. However, LMS's statement was part of its argument that Seagate sought to include "an improper *additional* limitation" to the claims related to whether "the [bcc-d] layer as a whole must form the uniaxial symmetry broken structure." J.A. 18327–28 (citation modified) (emphasis added).

As such, LMS's statement merely recited the district court's claim construction of "uniaxial symmetry broken structure" to argue that Seagate included an additional limitation unrelated to the "as a result" construction. There is no waiver here.

In sum, in both instances, LMS never "agree[d] to that portion of the adopted construction" of "uniaxial symmetry broken structure." *See Abbott Lab'ys*, 334 F.3d at 1352. Thus, LMS did not waive its claim construction position.

## B. The "As a Result" Construction

According to LMS, the proper construction of "uniaxial symmetry broken structure" is "a symmetry broken structure that is uniaxial." Appellant's Opening Br. 32. We agree.

"Claim construction is ultimately a question of law." *Evolusion Concepts, Inc. v. HOC Events, Inc.*, 22 F.4th 1361, 1365 (Fed. Cir. 2022). We review claim construction de novo "based on intrinsic evidence . . . and review any findings of fact regarding extrinsic evidence for clear error." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1378 (Fed. Cir. 2021).

"[T]he words of a claim are generally given their ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citation modified). We consider the meaning of a claim term in the context of the intrinsic evidence, "begin[ning] with the language of the claims." *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1350 (Fed. Cir. 2019). If "the claim language is not sufficiently clear on its face to provide guidance to a person of ordinary skill in the art as to the meaning of the term," we then "look first to the specification, followed by the prosecution history, to determine the meaning of the term." *Id.* at 1351.

LAMBETH MAGNETIC STRUCTURES, LLC v.                    11
SEAGATE TECHNOLOGY (US) HOLDINGS INC.

There are two exceptions in which we do not give the words of a claim their ordinary and customary meaning as understood by a person of ordinary skill in the art: (1) when a patentee sets out a definition and acts as her own lexicographer; and (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning. *Id.* It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, as the patentee must clearly express an intent to redefine the term. *Id.*

Turning first to the claim language, the term "uniaxial symmetry broken structure" provides that the structure be "uniaxial" and "symmetry broken," with no express statement that the latter causes the former. *See* '988 patent, claim 1. Such a causal connection would essentially amount to a functional relationship. But there is nothing in the claim language providing that the "uniaxial symmetry broken structure" is based on function. "Uniaxial" and "symmetry broken" describe structural features of the invention.[3] Accordingly, the claim term cannot be read to

---

[3]    The district court construed "uniaxial" as "[h]aving an anisotropy energy density function with only a single maximum and a single minimum as the magnetization angle is rotated by 180 degrees from a physical axis" and "symmetry broken structure" as "[a] structure consisting of unequal volumes or unequal amounts of the bcc-d variants of a six variant system." J.A. 28. These constructions are not disputed on appeal. As construed, both claim terms refer to structural features: the "energy density function" relative to a "physical axis," and a "structure" based on bbc-d variants. *See id.*

include the requirement that the symmetry broken nature of the structure causes the structure to be uniaxial.

The specification confirms the construction of the claim term as structural, not as based on a causal function. To the extent that the specification contains a limitation that the symmetry broken nature of the structure must cause the structure to be uniaxial, that would be a limitation based on function. We cannot "import into the claim a function from the specification, particularly when the claim recites only purely structural limitations." *Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1371 (Fed. Cir. 2001). Here, as explained, the invention is "claimed in purely structural terms" and thus "generally resists functional limitation." *See id.* In addition, lexicography does not apply, because the specification does not "clearly set forth" any definition of "uniaxial symmetry broken structure." *See Thorner*, 669 F.3d at 1365.

Thus, we conclude that "uniaxial symmetry broken structure" should be construed as "a symmetry broken structure that is uniaxial." Accordingly, the district court's construction, "a structure that is uniaxial as a result of being symmetry broken," is erroneous.[4]

Seagate's counterarguments are unpersuasive. Seagate contends that grammar requires the causal construction because, absent a comma or an "and" dividing the

---

[4]    While we do not reach extrinsic evidence, we note that the district court limited its construction based on the prosecution history of "the equivalent patent in the European Union," European Patent No. 1435091. *See* J.A. 19, 2100. Our precedent, however, counsels against "indiscriminate reliance on the prosecution of corresponding foreign applications in the claim construction analysis." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1279 (Fed. Cir. 2011).

two adjectives "uniaxial" and "symmetry broken," the former modifies the latter, thus indicating a causal link. Cross-Appellant's Opening and Response Br. 36–38. But English grammar precepts support the construction of the claim term as structural, not based on a causal function. *See In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983). Grammatical rules provide that the absence of an "intervening comma or conjunction" between two adjectives preceding a noun (here, "structure") indicates that the adjectives are "*un*related." BRYAN A. GARNER, DICTIONARY OF MODERN LEGAL USAGE 25 (2d ed. 1995) (emphasis added). We see no reason why the absence of an intervening comma or "and" makes it plain that the structure's symmetry broken nature must cause it to be uniaxial.

Seagate also asserts that "uniaxial symmetry broken structure" is a "coined term" with "no ordinary or established meaning" outside of the '988 patent and invokes the principle of claim construction that such a term "can only be understood in the context of the specification." Cross-Appellant's Opening and Response Br. 33–35 (citing, *inter alia*, *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 991 (Fed. Cir. 2007)). In *Malvern Panalytical Inc. v. TA Instruments-Waters LLC*, we discussed a district court's conclusion that a claim term "cannot be construed broader than the disclosure in the specification" because the term was a "coined term with no commonly understood meaning in the art." 85 F.4th 1365, 1374 (Fed. Cir. 2023) (citation modified). We acknowledged that we have "held that claim terms that have no plain or established meaning to one of ordinary skill in the art ordinarily cannot be construed broader than the disclosure in the specification." *Id.* (citation and quotations omitted). However, we emphasized that "[w]e have sparingly applied this principle of construction in other cases." *Id.* (citing, *inter alia*, *Honeywell*, 488 F.3d at 991). We noted that "[t]he district court's analysis predominantly addressed whether" the claim term at issue "ha[d] a plain and ordinary

meaning *broadly in the art*." *Id.* (emphasis added). We contrasted this question of whether a claim term is "a coined term . . . known in the art or readily understandable to a skilled artisan," with "the question of what plain and ordinary meaning a term has *in the context of a patent*," and explained that the latter "is the focus of our analysis." *Id.* (citation omitted) (emphasis added).

Following *Malvern*, it is beyond the "focus of our analysis" to consider whether "uniaxial symmetry broken structure" has "an ordinary meaning outside of the asserted patent[]." *See id.* (citation modified). Thus, to the degree that "uniaxial symmetry broken structure" is a coined term with no ordinary meaning outside of the '988 patent, we only consider "the question of what plain and ordinary meaning a term has *in the context of a patent*." *Id.* (emphasis added).

## C. Prejudicial Error

Seagate contends that any error in the district court's claim construction was harmless because "the jury would have reached the same noninfringement verdict regardless of whether the district court was correct in its construction of uniaxial symmetry broken structure." Cross-Appellant's Opening and Response Br. 50 (quoting *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1342 (Fed. Cir. 2010)) (citation modified). Seagate asserts that it presented (1) "extensive evidence that its accused devices were ***not uniaxial***, such that the condition precedent for the 'as a result' language becoming relevant was never met"; and (2) certain "grounds for non-infringement unrelated to the challenged construction." Cross-Appellant's Opening and Response Br. 50–51 (Seagate's emphasis).

Seagate fails to establish that the district court's erroneous construction was harmless. Because the jury did not indicate the basis for its finding of noninfringement, it cannot be ascertained whether the jury only relied on grounds unrelated to the district court's construction of "uniaxial

symmetry broken structure." *See* J.A. 84–85. As a result, it is unclear that "correction of the errors in a jury instruction on claim construction would not have changed the result, given the evidence presented." *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002). In other words, the jury verdict does not provide a clear basis to find that the error was harmless.

Moreover, we have concluded that a district court's erroneous claim construction is "prejudicial" when the defendant "relied on the district court's erroneous construction for its argument that it does not infringe the asserted claims." *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1025 (Fed. Cir. 2020). At trial, Seagate argued that "[i]f you are getting anisotropy as a result of other things, then you can't infringe." J.A. 31581. Seagate therefore relied on the district court's claim construction to argue that its products do not infringe because their uniaxial anisotropy is not caused by their structure being symmetry broken. Thus, we conclude that the district court's misconstruction of "uniaxial symmetry broken structure" was prejudicial.

## II. Enablement

In its cross-appeal, Seagate argues that, based on the evidence presented, a reasonable jury could not have found the '988 patent enabled. Cross-Appellant's Opening and Response Br. 72. Accordingly, Seagate argues that we should reverse the district court's denial of JMOL on invalidity. Cross-Appellant's Opening and Response Br. 71–79. Alternatively, Seagate argues that, if we remand for a new trial on infringement based on the district court's erroneous claim construction, we should also order a new trial on invalidity because a reasonable jury could not have found the patent enabled and a broader claim construction would affect the evidence and arguments presented on enablement. Cross-Appellant's Opening and Response Br. 79–80.

16        LAMBETH MAGNETIC STRUCTURES, LLC v.
            SEAGATE TECHNOLOGY (US) HOLDINGS INC.

A. Dismissal of the Cross-Appeal

LMS counters that the cross-appeal should be dismissed. Appellant's Response and Reply Br. 46–47. We agree and thus dismiss the cross-appeal.

Seagate prevailed in the district court proceedings that are the subject of this appeal. As the party that prevailed, Seagate cannot bring an appeal seeking to affirm this outcome on a different basis, i.e., that the '988 patent is invalid for lack of enablement. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1337 (Fed. Cir. 2010) ("[A] cross-appeal is proper only when 'acceptance of the argument it wishes to advance would result in a reversal or modification of the judgment rather than an affirmance.'" (quoting *Bailey v. Dart Container Corp. of Michigan,* 292 F.3d 1360, 1362 (Fed. Cir. 2002)). Indeed, Seagate admits in its briefing that "invalidity is available to the Court as an alternative basis to affirm the verdict." Cross-Appellant's Opening and Response Br. 71. Moreover, Seagate was not a declaratory plaintiff seeking a judgment of invalidity; rather, Seagate raised the defense of invalidity. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1156 (Fed. Cir. 2004); *Therasense*, 593 F.3d at 1337. A cross-appeal is improper and warrants dismissal where, as here, the cross-appellant "did not seek a declaratory judgment of invalidity" and "assert[ed] invalidity only as an affirmative defense to the claim of infringement." *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1377 n.1 (Fed. Cir. 2020). Accordingly, we dismiss Seagate's cross-appeal.

Although we dismiss Seagate's cross-appeal, we may consider the arguments made in the cross-appeal to the extent it affects our disposition of the main appeal. For instance, we have previously held that where "an improper cross-appeal is dismissed, we may nonetheless consider the arguments raised in the improper cross-appeal as alternative grounds upon which we could affirm the judgment of

the district court." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1322 (Fed. Cir. 2008). Accordingly, we next consider Seagate's arguments in its cross-appeal insofar as it affects our disposition of the main appeal.[5] We turn to one issue raised in the cross-appeal: whether we should order a new trial on invalidity.

## B. New Trial on Enablement

Seagate argues that, if we "broaden[] the construction of 'uniaxial symmetry broken structure'" and order a new trial on infringement, we should also order a new trial on invalidity. Cross-Appellant's Opening and Response Br. 79–80. Seagate asserts that "LMS's arguments for a new trial on infringement are all intertwined with invalidity." *Id.* at 80. According to Seagate, a new trial on invalidity would be necessary because LMS's "arguments against infringement are indistinguishably woven with the factual underpinnings of validity." Cross-Appellant's Reply Br. 18 (citation modified) (quoting *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986)).

First, it is within our discretion to order a new trial on enablement. The parties dispute whether, if we remand for a new trial on infringement on the ground that the district court misconstrued "uniaxial symmetry broken structure," we are required to also order a new trial on invalidity. Cross-Appellant's Opening and Response Br. 79–81; Appellant's Response and Reply Br. 63–64. We have generally

---

[5]    We note that, at oral argument, Seagate "drop[ped] any rebuttal" as to whether the cross-appeal should be dismissed, "assume[d] that the cross-appeal has been dismissed," and proceeded to address its "affirmative defense" on enablement as "alternative grounds." Oral Arg. 28:30–55, *available at* https://oralarguments.cafc .uscourts.gov/default.aspx?fl=23-1335_03042025.mp3.

found that a party is entitled to a new trial on invalidity under these circumstances, if the party shows that the district court's error was prejudicial. *Witco*, 787 F.2d at 1548; *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003). But regardless of a showing of prejudice, we have the discretion to order a new trial on invalidity. In *Witco*, for instance, we only provided that "[i]mproper conduct of the court that is prejudicial will warrant a new trial." 787 F.2d at 1548. We did not hold that it is a requirement that, for us to order a new trial, such improper conduct *must* be shown to be prejudicial. *See id.* Thus, we have the discretion to order a new trial on enablement.

Second, we exercise our discretion to order a new trial on enablement. The proper construction of "uniaxial symmetry broken structure" could change the arguments and evidence necessary to show that the '988 patent is not enabled. We agree with Seagate that, under the "broader" construction adopted herein, "the '988 patent would need to enable even more subject matter than was at issue in the prior trial." Cross-Appellant's Opening and Response Br. 80. Accordingly, we exercise our discretion to order a new trial on enablement consistent with this opinion.[6]

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we dismiss the cross-appeal; vacate the district court's

---

[6] In light of our remand for a new trial on enablement, we do not address Seagate's assertion that a reasonable jury could not have found the patent enabled, and in particular, the parties' corresponding arguments concerning *Amgen v. Sanofi*, 598 U.S. 594, 610 (2023). Cross-Appellant's Opening and Response Br. 71–79; Appellant's Response and Reply Br. 53–62. The parties are free to raise these arguments in future proceedings below.

judgment of noninfringement in favor of Seagate; and remand for a new trial on infringement and enablement, under the proper construction of "uniaxial symmetry broken structure."[7]

### VACATED AND REMANDED AS TO THE MAIN APPEAL; DISMISSED AS TO THE CROSS-APPEAL

COSTS

No costs.

---

[7]    LMS also argues that the district court made several erroneous evidentiary rulings.  Appellant's Opening Br. 42–70.  Because we vacate the district court's judgment of noninfringement and order a new trial on infringement and enablement, we need not reach these issues.